IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA CHEATOM | : | CIVIL ACTION |
| | : | NO. 05-251 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BURGER KING CORPORATION | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    FEBRUARY 22, 2006

Before the Court are defendant Burger King Corporation's motion for summary judgment (doc. no. 21) and plaintiff Angela Cheatom's response (doc. no. 26) in this employment discrimination action.

I.   BACKGROUND

Plaintiff, Angela Cheatom, an African American female, brings this action against defendant, Burger King Corporation, asserting a claim of race discrimination in violation of 42 U.S.C. § 1981.  Plaintiff makes a number of allegations in support of her claim.  Specifically, plaintiff alleges that while she was an Assistant Manager at the Ridley Park Burger King restaurant during the summer of 2002, plaintiff overheard Wayne Holden, a white Manager of the Ridley Park Burger King restaurant and one of plaintiff's supervisors, tell a fellow employee that Burger King needed to hire more white employees and that the

black employees worth keeping should be kept in the back of the store.  Plaintiff also alleges that during the course of her employment, John Young, a white Company Business Manager who functioned as both plaintiff and Wayne Holden's superior, commented that too many Chester people, meaning African Americans, were employed by Burger King, and that not enough Sharon Hill people, meaning white people, were working for the company.  Plaintiff further alleges that she was terminated on February 18, 2003 due to her race although the purported reason offered for her termination is that while she was working as Assistant Manager on February 17, 2003 when the Ridley Park Burger King was "robbed,"[1] she left the safe unlocked and unattended.  Defendant offered this reason for plaintiff's termination, plaintiff alleges, despite the fact that Burger King management had notice that the lock on the safe had been broken for some time.  In addition, plaintiff alleges, a white manager on duty at the time of a "robbery" was not terminated.

Based on the abovementioned allegations, plaintiff requests injunctive relief against further acts of discrimination, reinstatement to the position plaintiff would

---

[1]Plaintiff uses the word "robbery" to refer to a theft whereby an employee stole money from a Burger King safe inside the restaurant.  There was no "robbery" in the legal sense, which Pennsylvania law defines as involving an element of inflicting or threatening to inflict serious bodily injury or the use of force.  See 18 Pa. Cons. Stat. § 3701(a) (2005).

have occupied or, in lieu thereof, front pay, back pay with
interest, punitive damages, compensatory damages for plaintiff's
aggravation, anxiety, lost wages and benefits and attorney's fees
and costs.

II.  DISCUSSION

      Defendant Burger King filed this motion for summary
judgment, arguing that plaintiff cannot make out a prima facie
case of race discrimination nor can she overcome the legitimate
non-discriminatory reason for her termination offered by Burger
King.  Plaintiff responds that she can make out a prima facie
case of discrimination and that there is evidence of pretext
revealed in the deposition testimony of her supervisor and other
employees' observations of racist comments made by supervisory
personnel.

      A.   Standard for Summary Judgment.

      A court may grant summary judgment only when "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A fact is "material" only if its
existence or non-existence would affect the outcome of the suit
under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S.

3

242, 249 (1986).  An issue of fact is "genuine" only when there
is sufficient evidence from which a reasonable jury could find in
favor of the non-moving party regarding the existence of that
fact.  Id.  In determining whether there exist genuine issues of
material fact, all inferences must be drawn, and all doubts must
be resolved, in favor of the non-moving party. Coregis Ins. Co.
v. Baratta & Fenerty, Ltd., 264 F.3d 302, 305-06 (3d Cir. 2001)
(citing Anderson, 477 U.S. at 248).

        Although the moving party bears the burden of
demonstrating the absence of a genuine issue of material fact, in
a case such as this, where the non-moving party is the plaintiff,
and therefore, bears the burden of proof at trial, that party
must present affirmative evidence sufficient to establish the
existence of each element of her case. Coregis, 264 F.3d at 306
(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
Accordingly, a plaintiff cannot rely on unsupported assertions,
speculation or conclusory allegations to avoid the entry of
summary judgment, see Celotex, 477 U.S. at 324, but rather, she
"must go beyond the pleadings and provide some evidence that
would show that there exists a genuine issue for trial." Jones v.
U.P.S., 214 F.3d 402, 407 (3d Cir. 2000).

        B.   The McDonnell Douglas Paradigm.

        Plaintiff brings a claim of race discrimination under
42 U.S.C. § 1981.  The Title VII standard established under

McDonnell Douglas also applies to § 1981 claims. Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 498-99 (3d Cir. 1999). The McDonnell Douglas paradigm applies to employment discrimination cases in which the plaintiff offers indirect or circumstantial proof of discrimination, as opposed to direct proof. Here, plaintiff has not offered any direct evidence of race discrimination, therefore, McDonnell Douglas applies.

Under McDonnell Douglas, the plaintiff must first "produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)). If the plaintiff establishes a prima facie case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge." Id. (citing Hicks, 509 U.S. at 506-07). If the defendant articulates a legitimate, non-discriminatory reason for the adverse employment action, the employer satisfies its burden of production. See id. (citing Hicks, 509 U.S. at 507-08).

The plaintiff may then "survive summary judgment . . . by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2)

believe that an invidious discriminatory reason was more likely
than not a motivating or determinative cause of the employer's
actions."  Id. at 1108 (citing Fuentes v. Perskie, 32 F.3d 759,
764 (3d Cir. 1994)).  With regard to the showing required of
plaintiff,

> To discredit the employer's proffered reason,
> however, the plaintiff cannot simply show that
> the employer's decision was wrong or mistaken,
> since the factual dispute at issue is whether
> discriminatory animus motivated the employer,
> not whether the employer is wise, shrewd,
> prudent, or competent.  Rather, the non-moving
> plaintiff must demonstrate such weaknesses,
> implausibilities, inconsistencies,
> incoherencies, or contradictions in the
> employer's proffered legitimate reasons for
> its action that a reasonable factfinder could
> rationally find them "unworthy of credence,"
> and hence infer "that the employer did not act
> for [the asserted] non-discriminatory
> reasons."  While this standard places a
> difficult burden on the plaintiff, "it arises
> from an inherent tension between the goal of
> all discrimination law and our society's
> commitment to free decisionmaking by the
> private sector in economic affairs."

Fuentes, 32 F.3d at 765 (internal citations omitted).  Finally,
courts should keep in mind that "[a]lthough intermediate
evidentiary burdens shift back and forth under this framework,
'the ultimate burden of persuading the trier of fact that the
defendant intentionally discriminated against the plaintiff
remains at all times with the plaintiff.'"  Reeves v. Sanderson
Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Tex.
Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

    <u>1.   Plaintiff can establish a prima facie case of</u>
                <u>race discrimination.</u>

        To establish a prima facie case of race discrimination, plaintiff must demonstrate that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) other employees who are not members of a protected class were treated more favorably or she was discharged under the circumstances giving rise to an inference of unlawful discrimination.  <u>See Goosby v. Johnson & Johnson Med., Inc.</u>, 228 F.3d 313, 318-19 (3d Cir. 2000); <u>Rotteveel v. Lockheed Martin Corp.</u>, No. 01-6969, 2003 U.S. Dist. LEXIS 12329, at *19-20 (E.D. Pa. July 15, 2003).  Here, prima facie elements one and two are satisfied.  Plaintiff is an African-American woman, and therefore qualifies as a member of a protected class.  She was terminated, and therefore suffered an adverse employment action.  Prima facie elements three and four are in dispute.

        <u>a.  Plaintiff was qualified for the job.</u>

        Defendant argues that plaintiff is unable to show that she was qualified for the position because she received numerous sub-standard evaluations during her tenure at the company.  In addition, defendant argues that plaintiff cannot prove that other employees outside of the protected class were treated more favorably or that her discharge gives rise to an inference of

discrimination.  Defendant notes that another white manager,
Leonard Goldberg, was terminated within two weeks of a "robbery"
during his shift at another store, the same circumstances under
which plaintiff was terminated.

According to plaintiff, the focus should be on other
actions by defendant.  First, plaintiff attempts to distinguish
whether she was qualified for the job from whether she adequately
performed, noting that the latter is relevant to the pretext
analysis.  Plaintiff relies on her two years of prior employment
with satisfactory reviews to show she was qualified for the
position.  Moreover, she points to deposition testimony from
Delma Wells, who became Corporate Business Manager in 2002, that
plaintiff would have been eligible for a higher position had she
had a different manager.  The evidence of discrimination,
according to plaintiff, is that she was terminated under
circumstances giving rise to an inference of discrimination.  The
inference, plaintiff argues, comes from Delma Wells' statement
that there was "no rhyme, no reason" to the decision to terminate
after a "robbery."  Pl.'s Ex. B at 74.  Moreover, other employees
testified that Wayne Holden and Delma Wells made racial remarks
on the job.

Plaintiff is correct that performance issues are best
left to the analysis of pretext under the burden shifting
paradigm.  See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983

8

F.2d 509, 523 (3d Cir. 1992) ("[A] dispute [over qualifications]
will satisfy the plaintiff's prima facie hurdle of establishing
qualification as long as the plaintiff demonstrates that 'she was
sufficiently qualified to be among those persons from whom a
selection, to some extent discretionary, would be made.'"); Jalil
v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989) (holding that
employers' defenses such as insubordination, poor performance and
misconduct are more logically raised to rebut plaintiff's prima
facie case; these defenses are "plainly [] not something the
plaintiff must disprove to succeed at the first level of proof").
Therefore, plaintiff need only show she possessed the necessary
"training and experience for the job from which [s]he was
discharged." Turner v. Schering-Plough Corp., 901 F.2d 335, 342
(3d Cir. 1990). Plaintiff points to her two years as an
assistant manger to show she was qualified for the job. That is
enough to satisfy the prima facie element that plaintiff is
qualified for the job. See, e.g., Carter v. Potter, No. 02-7326,
2004 U.S. Dist. LEXIS 25677, at *31 (E.D. Pa. Dec. 21, 2004)
(looking to plaintiff's years of service at the post office to
determine that he was qualified for the job).

> b.   There is an inference of discrimination.

The requirement that the adverse employment action
occur under circumstances giving rise to an inference of
discrimination can be satisfied in several ways, and must be

tailored to fit the context of the case.  <u>See, e.g.</u>, <u>Carter</u>, 2004
U.S. Dist. LEXIS 25677, at *28 n.8 (collecting cases, including
<u>Pivirotto v. Innovative Sys.</u>, 191 F.3d 344, 357 (3d Cir. 1999)
(holding that in reduction-in-force cases, plaintiff satisfies
fourth element of prima facie case by showing that plaintiff "was
discharged, while the employer retained someone outside the
protected class") (quoting <u>Marzano v. Computer Sci. Corp.</u>, 91
F.3d 497, 503 (3d Cir. 1996); id. (stating that a plaintiff may
satisfy fourth element of prima facie case without proving that
employees outside the protected class were treated more
favorably, or that plaintiff herself was replaced by someone
outside the protected class) (citing <u>Matczak v. Frankford Candy &</u>
<u>Chocolate Co.</u>, 136 F.3d 933, 939 (3d Cir. 1997))).  Here, Delma
Wells statements that termination decisions after store
"robberies" had no rhyme or reason and that "numerous times
certain district mangers had robberies and nothing happened to
[them]," Pl.'s Ex. B at 74, is enough to create an inference of
discrimination.  <u>See, e.g.</u>, <u>Pivirotto</u>, 191 F.3d at 357
("requirements of the prima facie case are flexible").

Therefore, plaintiff has proven a prima facie case of
race discrimination.  The burden of production then shifts to the
employer to offer a legitimate non-discriminatory reason for
plaintiff's discharge under the <u>McDonnell Douglas</u> paradigm.  The
burden of persuasion remains at all times with the plaintiff.

10

        2.   Defendant has offered a legitimate non-
              discriminatory reason for plaintiff's discharge.

        Defendant terminated plaintiff because the store was
"robbed" while she left the safe unlocked and unattended.
Leaving the safe unlocked and unattended was in violation of
company policies and procedures.  Def.'s Ex. N (stating that
"[t]heft of BKC property" can result in "performance counseling,
discipline and/or termination.").  Plaintiff cannot refute that
the safe should have been locked and should not have been left
unattended.  Both parties agree that plaintiff committed a
serious security breach by leaving the safe unlocked and
unattended.  Although she proffers reasons for her action, those
reasons are best evaluated in the discussion of pretext.

        Therefore, the defendant has offered a legitimate non-
discriminatory reason for plaintiff's termination.  Under the
McDonnell Douglas paradigm, the burden shifts back to plaintiff
to show that defendant's proffered reason was pretext for
discrimination.

        3.   Plaintiff has not offered sufficient evidence to
              counter defendant's proffered reason for
              termination.

        In an effort to prove pretext, plaintiff offers the
following evidence.  First, plaintiff emphasizes that the safe
was broken and had been for some time before the "robbery."  She

11

claims to have informed defendant of the safe's condition on several occasions and complained of the safe's age and condition as a problem.[2]  In addition, she asserts that Delma Wells was aware of the safe's condition.  Defendant disputes whether Wells or William Cocco, the loss prevention manager at the store, were aware of any problems with the safe.  Moreover, defendant points out that at no time was the safe inoperable such that it could not be locked or unlocked by plaintiff.  An assertion that the safe was difficult to lock, defendant argues, is not commensurate with plaintiff's duty as an assistant manager to follow the cash handling procedures and prevent loss.

Second, plaintiff notes that there is evidence of disparate treatment of African American employees by Delma Wells.[3]  That evidence consists of racial comments made by Wells and witnessed by other employees.  Plaintiff testified at deposition that Wells would yell at black employees in front of

---

[2]Apparently, the keypad on the safe was badly worn and damaged such that it was difficult to punch in the code to unlock the safe.  Also, the screen on the safe did not always read properly.  Plaintiff alleges that she reported this condition repeatedly to Damika Sawyer, an African American manager and her direct supervisor.

[3]Delma Wells is the person who actually delivered the news to plaintiff that she was terminated.  Wells testified at her deposition that Mike Hochniuk told Wells that plaintiff was to be terminated.  Further, Hochniuk's direction came from human resources personnel Lisa Sembrot.  Pl.'s Ex. B at 44.  Therefore, there were three decisionmakers involved in the termination process: Wells, Hochniuk and Sembrot.

customers, saying: "What is wrong with you? You're stupid.  You look dirty.  Did you wash up today; you look dirty?" or "You black person, you can't come in with a clean uniform?"  Pl.'s Ex. A at 102-03.  In addition, plaintiff alleges disparate treatment at the hands of Wayne Holden and John Young who purportedly spoke of the need to hire less African Americans and to station African American employees in the back of the restaurant out of patrons' view.  Plaintiff submitted an affidavit by Chasity Martinez, a white former employee, alleging that Wayne Holden told her that he wanted to get rid of black employees and then verbally abused black crew members to force them to quit.  Pl.'s Ex. G.  Finally, plaintiff again highlights Wells' statement at deposition that termination decisions were made with "no rhyme, no reason" following store "robberies."  Pl.'s Ex. B at 74.

Plaintiff's case, therefore, if taken in the light most favorable to plaintiff, amounts to a broken safe of which defendant was aware, one racial comment by decisionmaker Wells, racial comments by non-decisionmakers Young and Holden and Wells' "no rhyme, no reason" deposition testimony.[4]  Regardless of the

---

[4]Defendant argues that Wells' "no rhyme, no reason" statement was taken out of context in plaintiff's brief. Defendant does not, however, offer any relevant portion of Wells' deposition testimony in support of that allegation.  Moreover, the page of deposition testimony included in plaintiff's exhibit B (page 74) appears to be a general assertion regarding enforcement of Burger King cash policies.  The relevant language reads:

condition of the safe, plaintiff committed a serious security breach by leaving the safe unlocked and unattended, as attested to by both parties.  The Third Circuit recognizes "that an employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason." <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 332 (3d Cir, 1995). Whether defendant should have terminated plaintiff when she alleged the safe was broken is a business decision that may or may not have been correct.  The Court is not a "super-personnel department[]" that sits in judgment of business decisions.  <u>Id.</u> (quoting <u>McCoy v. WGN Continental Broadcasting Co.</u>, 957 F.2d 368, 373 (7th Cir. 1992)).  Despite plaintiff's allegations that she warned her supervisor of the safe's condition, she was terminated for a non-discriminatory reason.  <u>See</u> Def.'s Ex. N ("Acceptable

---

> Q.  Tell me about that.  What people, to your knowledge, were not terminated for cash violations who had cash violations?
>
> * * *
>
> A.  A lot of these managers weren't terminated and there were robberies that occurred numerous times in numerous different districts and people were not terminated. And then sometimes people were terminated and it made no rhyme, no reason.

The standard on summary judgment requires that the evidence be taken in light most favorable to the non-moving party, here the plaintiff, therefore the Court will accept this statement as presented by plaintiff, defendant having offered no evidence to the contrary.

14

Standards of Conduct and Discipline Policy" states that "[t]heft of BKC property" can result in "performance counseling, discipline and/or termination."). Whether defendant ignored plaintiff's complaints about the safe does not amount to racial animus.

Moreover, there are three decisionmakers in plaintiff's termination, Mike Hochniuk, Lisa Sembrot and Delma Wells. Taken in light most favorable to plaintiff, at most there is one stray remark involving race on the part of one of three decisionmakers. There is no evidence that any racial remarks by Wells were directed at plaintiff, but rather the allegation is that Wells made the comment in plaintiff's presence. See Fuentes, 32 F.3d at 767 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision" (quoting Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992))). In addition, stray comments by Young and Holden do not bear on plaintiff's claim that she was terminated based on race, as neither employee participated in the decision to terminate her employment. Id.

Finally, and most importantly, there is no evidence that other employees outside of the protected class were treated more favorably than plaintiff after their stores suffered a loss due to theft. The one white manager addressed by the parties,

Leonard Goldberg, was terminated after his store suffered such a loss.  Moreover, although Wells' statement that such decisions to terminate following theft of store property had "no rhyme, no reason" helped plaintiff overcome the burden of proving her prima facie case, that statement does not in and of itself amount to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's reason for termination that a reasonable factfinder could find it "unworthy of credence."  Fuentes, 32 F.3d at 765.  Plaintiff, therefore, has not offered sufficient evidence to counter defendant's legitimate reason for termination.


III. CONCLUSION

        Based on the foregoing reasons, summary judgment will be granted in favor of defendant.  Plaintiff has not carried her burden at step three of the McDonnell Douglas paradigm to show the employer's legitimate non-discriminatory reason for termination was a pretext such that a reasonable factfinder could disbelieve the employer's proffered reason or believe the employer was motivated by racial animus.

        An appropriate order follows.

16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANGELA CHEATOM                    :    CIVIL ACTION
                                  :    NO. 05-251
        Plaintiff,               :
                                  :
      v.                          :
                                  :
BURGER KING CORPORATION           :
                                  :
        Defendant.               :

### ORDER

**AND NOW,** this **22nd** day of **February, 2006,** it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (doc. no. 21) is **GRANTED.**

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of defendant and against plaintiff.

**AND IT IS SO ORDERED.**

_S/Eduardo C. Robreno_

**EDUARDO C. ROBRENO, J.**

17